**MID-AMERICA TERMINAL OF KENTUCKY, INC., Appellant,**

v.

**OWENSBORO RIVER SAND AND GRAVEL COMPANY, Appellee.**

Court of Appeals of Kentucky.

Nov. 14, 1975.

Rehearing Denied March 5, 1976.

William L. Wiesman, Owensboro, Morton Holbrook, William E. Gary, III, E. Robert Goebel, Sandidge, Holbrook & Craig, PSC, Owensboro, for appellant.

William L. Wilson, George S. Wilson, III, Wilson, Wilson & Plain, Owensboro, for appellee.

STEPHENSON, Justice.

The trial court enjoined Mid-America from conducting any activities which interfere with the sand and gravel rights of River Sand and mandatorily enjoined Mid-America to remove all pilings and structures previously placed in the Ohio River under which River Sand owns the sand and gravel rights. We reverse.

River Sand has for many years conducted a business of mining and removing sand and gravel from sand bars lying on the bed of the Ohio River, which were owned or leased by it. River Sand has permits from the U. S. Army Corps of Engineers for this

type operation for a distance of 86 miles up and down the Ohio River. The dispute on this appeal involves two tracts of land, the McIntyre tract and the Wright tract. The McIntyre tract was acquired by River Sand and sold to the McIntyres with a recited further consideration "that the Party of the Second Part [Forrest McIntyre] and Mildred McIntyre, his wife, have this day executed to Party of the First Part [River Sand] by separate instrument a lease for the period of ninety-nine years, beginning with the date hereof [October 18, 1941] all of the sand and gravel rights which they have or may have in the bed of the Ohio River beyond timberline and lying opposite the tract of land hereinafter described and conveyed, together with the exclusive right to remove said sand and gravel during said period and other rights as in said lease more fully set forth." On the same date, the McIntyres executed a lease to River Sand for "all of the sand and gravel rights which the parties of the First Part [McIntyres] have or may have in the bed of the Ohio River beyond timber line and lying opposite the following described tract of land which fronts 5,328 feet, more or less, on the Ohio River, together with the exclusive right to pump, dredge, dig, or otherwise recover and remove without payment of any further rent, royalties, or other consideration, all of the sand and gravel in the bed of the Ohio River beyond timberline and lying opposite said tract of land, and also the right to operate its boats, dredges, diggers, barges, and other water craft in the Ohio River opposite said land, and to do whatever may be necessary to recover and remove the said sand and gravel during said period of ninety-nine (99) years."

The Wright tract adjoins the McIntyre tract on the shore of the Ohio River. River Sand acquired by deed "that certain piece of real estate, the same being a sand and gravel bar located in the Ohio River east of the City of Owensboro and running the full length of the following described land, the same being separated from said tract of land by the water line of said river at the present normal pool stage."

Later Mid-America acquired title to the McIntyre tract and the Wright tract consisting of 745 acres of land along the shore of the Ohio River and the bed of the Ohio River, subject to the McIntyre lease and excluding the sand and gravel bar previously conveyed to River Sand.

Mid-America, after acquiring these properties with the intention of establishing a terminal for transshipment of coal and for handling oil and agricultural products, began construction of temporary facilities on the McIntyre tract. Pilings were driven into the bed of the river adjacent to the shore line, and a captive barge was moved to these pilings as a loading facility to support a conveyor to fill empty barges docked alongside. For this facility, the bank was cleared 600 feet along the shore line of the McIntyre tract to a point 40 to 50 feet on into the river. The testimony of Mid-America is that no commercial sand or gravel was encountered in this clearing operation.

In addition, Mid-America for a permanent facility excavated a slip 300 feet wide and 1,100 feet inland. This slip is completed except for the removal of a small plug of land along the bank of the river. It is contemplated that barges will move in and out of this slip for loading and unloading, and when it is put into operation, the temporary facility will no longer be needed.

Mid-America's future plans include a similar slip farther downstream on the same lands. This involves widening a creek, known as Puppy Creek, where it empties into the river. The operation of the slips will require that a nine-foot channel be maintained between the mouths of the two slips and the navigable waters of the river. This will require clearing two channels, each approximately 300 feet wide, extending from the shore about 75 feet out to the navigable waters of the river.

The McIntyre and Wright tracts extend 6,470 feet along the shore line.

River Sand received notice of the intent of Mid-America to construct these facilities. By letter River Sand informed Mid-America that it objected to any encroachment upon its properties, being the sand and gravel on the McIntyre and Wright tracts.

After construction of the temporary facility commenced, River Sand filed a lawsuit against Mid-America seeking to enjoin Mid-America from any dredging or activity on its sand and gravel and to mandatorily enjoin it to remove the pilings and structures already in place.

It was stipulated by the parties that there is a common source of title to the respective estates and that ownership of both the McIntyre and Wright tracts includes the bed of the river to the thread of the stream of the Ohio River, some 1,300 feet from the river bank.

In its findings of fact and conclusions of law, the trial court found that Mid-America has invaded the area beyond the timberline on the McIntyre tract, which is under exclusive lease to River Sand regardless of the ownership of the river bank; that River Sand does not have an adequate remedy at law in that it will sustain irreparable injury with no pecuniary standard for the measurement of damages; that injunctive relief lies because of a "negative covenant" contained in the language of the McIntyre lease; and that the activities of Mid-America constitute a continuing trespass upon the estate of River Sand, an additional ground for injunctive relief.

The trial court then enjoined Mid-America from conducting any further activities over or across the lands of River Sand which would interfere in any way with the sand and gravel rights, specifically any future dredging or erection of piling or structures in the river beyond the timberline or low water mark as applicable and directed Mid-America to remove all structures previously placed in the Ohio River under which River Sand owns the sand and gravel rights.

This appeal presents us with the problem of determining the rights of the owners of these separate estates.

Mid-America is the owner of a fee simple title in the McIntyre tract including the bed of the Ohio River to the thread of the stream and the riparian rights, subject to the 99-year lease of the sand and gravel previously conveyed to River Sand. Mid-America is also the owner of a fee simple title in the Wright tract including the bed of the Ohio River to the thread of the stream and the riparian rights, but not including a separate estate in the sand and gravel which is owned by River Sand in fee simple by severance deed executed prior to Mid-America's acquisition of title.

The trial court construed the language of the McIntyre lease granting an "exclusive right to mine and remove the sand and gravel" as a "negative covenant" authorizing the issuance of an injunction. This is the language of an instrument of lease as opposed to the language of a fee simple grant in a deed such as the grant in the Wright deed to River Sand conveying the sand and gravel. We are of the opinion that there is not a "negative covenant" present here, and in this ruling the trial court was in error. The word "exclusive" in a lease, pertaining to the right to enjoy the fruits of the lease, does not in itself warrant an inference of a covenant not to perform an act or acts. Likewise, the activities of Mid-America here could not be considered a trespass in the ordinary definition of the term.

Much of the argument of River Sand is premised on the "exclusive right to remove sand and gravel." We would point out that the grant of fee simple title in the Wright deed to the sand and gravel is not terminable, and we do not believe that River Sand would contend that its title there is of lesser dignity than the rights granted in a 99-year lease which would expire at the end of the term.

For the purposes of this case, River Sand owns an estate in the sand and gravel locat-

ed in the bed of the river on both tracts, and the rights insofar as they affect Mid-America are the same—that is, they require a determination of how far, if at all, one estate can interfere with the enjoyment of the other estate.

Mid-America argues first that it should be permitted to continue its present activities and its proposed development because of the riparian rights incident to the ownership of the shore. River Sand concedes the riparian rights of Mid-America but argues that this right of ownership does not carry with it the right to dredge and maintain a channel from the shore to the navigable portion of the river for ingress and egress of barges to the proposed slips or to drive pilings in the riverbed along the shore. We have reviewed the authorities cited on this proposition and are of the opinion that they do not resolve this question and prefer to decide the matter on the respective rights incident to the severed estates.

The question presented here is a matter of first impression in this jurisdiction, and so far as we can tell in other jurisdictions as well. The severance of estates here and respective rights of the owners of such estates in the factual situation presented here has an analogy, if there is one at all, as stated in 54 Am.Jur.2d, Mines and Minerals, § 118:

"Where the mineral estate has been severed from the surface, the question arises whether the surface owner has a right of access, through the solid mineral conveyed, to reach underlying strata, water supply, oil and gas, or other seams of solid minerals. The courts have permitted the surface owner such access even where the deed conveying the particular solid mineral contains no reservation of a way of access. Such a right of access has been held to be a way of necessity, an easement appurtenant to the land or estate therein retained by the grantor. To enjoy this right, it is not necessary for the surface owner to show that he could not have reached his substrata estate without penetrating the grantee's minerals. Accordingly, a surface owner has the right to drill a well through a grantee's seam of coal, and this is so regardless of whether he is drilling for water or for oil."

To make this analogy applicable here, we must place the surface of the Ohio River in the category of surface lands, the sand and gravel as a severed mineral estate, and the bed of the river and its underlying strata as comprising the balance. *Chartiers Block Coal Co. v. Mellon*, 152 Pa. 286, 25 A. 597 (1893), in sustaining the right of access through a coal seam to underlying strata stated that it "should be sustained in a reasonable manner, having due regard for the interest and rights of both parties. But it cannot be permitted to an extent that will destroy the grant of the coal, nor even to seriously depreciate it without ample compensation."

The problem presented is the extent to which this access can interfere with the enjoyment of the other estate.

■ We are of the opinion that in the factual situation presented here each of the parties is entitled to prevent the other from exercising its rights of ownership of the severed estate arbitrarily, capriciously, oppressively, or wantonly and thereby depriving the other of its respective estate, but each may use the respective estates in a reasonable, prudent manner, having due regard to and consistent with the interests and rights of the other.

■ The area comprising the sand and gravel rights of River Sand is substantial. We note that the exhibits show sand bars in irregularly shaped formations over part of the area. We cannot say from the record to what extent the activities of Mid-America will interfere with River Sand in its future operations, if at all. Suffice to say, there is no showing of irreparable injury in this record; and we are of the opinion that should an unreasonable interference with the enjoyment of the estate of River Sand

develop, a pecuniary standard of damages can be ascertained.

The judgment is reversed.

All concur.